## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KOREA WEEK, INC., *et al.*** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | **NO. 15-6351** |
| | **:** | |
| **GOT CAPITAL, LLC, *et al.*** | **:** | |
| | **:** | |

### MEMORANDUM

**KEARNEY, J.**                                                                                   **May 27, 2016**

Class actions allow named plaintiffs to represent numerous unnamed parties so long as the named plaintiffs can adequately represent the unnamed parties. The plaintiff seeking appointment as a class representative must first be able to bring a class claim.  If a named plaintiff cannot state a claim herself, she cannot be an adequate fiduciary to represent unnamed plaintiffs. When, as here, named merchant plaintiffs signed commercial financing contracts agreeing not to be a representative plaintiff in a class action, we cannot find the named merchant plaintiffs can adequately represent the absent class members. The named plaintiffs respond they should be considered consumers and the class action waivers are unconscionable. After a class certification hearing where we evaluated the credibility of the only two proffered named plaintiffs and admitted exhibits including deposition testimony of some, but not all, named merchant plaintiffs, we find the named plaintiffs waived their right to bring their claims in a class action and did not adduce evidence of unconscionability. As each of the named plaintiffs agreed not file a class action, they cannot now be the named plaintiffs charged with representing unnamed merchants. We deny their motion for class certification in the accompanying Order.

## I.    Background

Plaintiffs Korea Week, Inc., R2L, Inc. d/b/a Koba Restaurant, In Ja Hwang, J & S Cleaners, Kim's Farms, and Master Yu's Power Kick, LLC seek to certify a class[1] of persons or businesses who signed merchant cash advance financing arrangements ("MCA") with Defendants from January 2007 to the present which allegedly violate the Racketeer Influenced and Corrupt Organizations Act ("RICO").[2]

Plaintiffs allege Defendants target the Korean-American and Asian-American business communities through marketing, advertising, and soliciting of MCA financing in Pennsylvania, New York, New Jersey, Texas, California and England.[3]  Plaintiffs, all small business merchants, allege Defendants advertise MCA arrangements purporting to be legitimate purchases of Plaintiffs' receivables but which are really high interest short-term loans with rates in excess of 150-200% constituting loan sharking, predatory lending, and money laundering schemes. Plaintiffs allege Defendants forced repayment of these loans with a penalty in cash when Plaintiffs were late in making payments causing Plaintiffs "fear, intimidation, pressure, anxiety, and emotional stress."

Plaintiffs argue we should certify their proposed class because their claims satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Federal Rule of Civil Procedure 23(a), and because common issues regarding the RICO claims predominate and a class action is a superior method of adjudication required by Rule 23(b)(3).

Defendants oppose class certification, arguing all the contracts between the parties contain a class action waiver barring any such action.[4]  Defendants alternatively argue Plaintiffs' RICO claims fail to satisfy the requirements of Rules 23(a) and (b)(3). Plaintiffs argue the class

action waivers are procedurally and substantively unconscionable, cannot be enforced, and their claims must proceed under Rule 23.[5]

### A. Class Certification Hearing

At our class certification hearing, Plaintiffs adduced testimony from two named plaintiffs: In Ja Hwang, owner of Plaintiff Basin Green House and Sang Y. Won, former owner of Plaintiff R2L, Inc. d/b/a Koba Restaurant. Plaintiffs presented exhibits including portions of deposition transcripts of Ms. Hwang, Mr. Won, and Tony Yu, owner of Plaintiff Master Yu's Power Kick, LLC. Defendants submitted exhibits including portions of deposition transcripts of Ms. Hwang, Mr. Won, Mr. Yu, and Tae Yeon Kim and Howoong Kwon, former owners of Plaintiff Korea Week, Inc.

### 1. Contractual agreements between the parties: arbitration and class action waiver clauses

Although there are six named Plaintiffs who allegedly entered into MCA agreements with Defendants, Plaintiffs' Motion for Class Certification attaches only Korea Week's agreements with different Defendants.[6] At the class certification hearing, Plaintiffs introduced Korea Week's contracts with Defendants, and a contract between Plaintiff Master Yu's Power Kick, LLC and Defendants. Defendants introduced thirty-four (34) contracts entered into by the named Plaintiffs.[7] Plaintiffs did not contest the admission of these contracts, dispute their accuracy, or present any evidence of additional contracts at the hearing.

### *Korea Week's contracts*

All of the Korea Week contracts contain a "Class Action Waiver" [8]:

> The Parties acknowledge and agree that the amount at issue in this transaction and any disputes that arise between them are large enough to justify dispute resolution on an individual basis. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST ANY OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION. [9]

Plaintiffs did not adduce testimony from Korea Week. Plaintiffs concede they cannot establish unconscionability as to Korea Week and admit it cannot be the Class representative.

### *R2L's contract*

Plaintiffs offered one (1) contract between Mr. Won of R2L, Inc. and Defendant YLH, LLC d/b/a H-Capital. This agreement contains the same class action waiver signed by Korea Week. [10]

### *Basin Green House contracts*

Plaintiffs offered the cover page of two (2) contracts between Basin Green House, and YLH, LLC d/b/a H-Capital. [11] Although the versions introduced by Plaintiffs at the hearing contain only one page, Defendants produced complete versions of these two contracts plus another contract between Basin Green House and H-Capital. [12] All of Basin Green House's contracts contain the same class action waiver signed by Korea Week. [13]

### *Master Yu's Power Kick, LLC contracts*

Plaintiffs offered a contract between Master Yu's Power Kick and Defendant YLH, LLC d/b/a H-Capital. [14] In addition to this contract, Defendants offered five (5) other contracts between Master Yu's Power Pick and YLH, LLC and YLH, LLC d/b/a H-Capital. All of these contracts contain the class action waiver signed by Korea Week. [15]

### *J & S Cleaners and Kim's Farms' contracts*

Defendants offered the contracts of Plaintiffs J & S Cleaners, and Kim's Farms.  The contract between Plaintiff Kim's Farm and YLH, LLC contains a class action waiver.[16] Plaintiff J & S Cleaners signed nine (9) contracts.[17] The first contract contains an arbitration provision, but does ***not*** contain a class action waiver.[18] The remaining contracts with YLH, LLC and YLH, LLC d/b/a H-Capital all contain arbitration provisions and the class action waiver signed by Korea Week.[19]

### 2.  Hearing testimony of Ms. Hwang and Mr. Won.

Plaintiffs claim the class action waivers are void as unconscionable and ask us to consider them as "consumers" rather than merchants. We required Plaintiffs to adduce evidence of unconscionability. Plaintiffs offered Ms. Hwang and Mr. Won as witnesses to unconscionability.

### *Testimony of Ms. Hwang*

Ms. Hwang owns Basin Green House and employs at least two other employees. She responded to an advertisement in Korean for Defendants' business financing. She admits signing the November 9, 2012 and March 19, 2013 contracts, but testified she did not receive complete copies of the contracts and Defendants did not allow her to keep a copy of these contracts. She testified she entered into these contracts alone, she did not understand the documents, and does not speak English well. She testified to a time when she could not make a payment to Defendants because of illness and Defendants "yelled and screamed" at her to make payments.

On cross-examination, Ms. Hwang testified she texted H-Capital in English, which she characterized as "simple stuff" such as the need for more money and directions to her home when she was not at her shop to arrange payments. Ms. Hwang testified she understood H-Capital's responsive texts in English.

Ms. Hwang submitted an Affidavit in support of class certification.[20] When questioned on the assertions in her Affidavit, Ms. Hwang testified: she did not understand English well enough to understand the terms and conditions of the agreement she signed with H-Capital; when she asked H-Capital to explain the terms of the agreement, a representative stated the terms are very simple, but did not explain a cash advance or purchase of future receivables, and she does not understand future receivables. When questioned about paragraph 26 of her Affidavit asserting she "would eventually determine" H-Capital's financing arrangement "was not a merchant loan or purchase of receivable [sic], but a simple usury loan with excessively high interest and part of a large scheme to take advantage of minority business owners desperate for financing,"[21] Ms. Hwang testified she only paid H-Capital what she agreed to pay on a weekly basis; Defendants promised to lend her money and they did so; Defendants gave her a receipt for every payment; Defendants never pressured her to sign any contract;[22] and, she later learned she was paying high interest which Defendants never mentioned, but admitted she knew the payment amount.[23] Ms. Hwang further testified she entered into a second and third contract with Defendants.

### *Testimony of Mr. Won*

Mr. Won testified he responded to an advertisement in Korean for Defendants' business financing. He spoke with a representative at H-Capital and asked about the procedure to secure financing. The H-Capital representative spoke to Mr. Won in English.  Mr. Won testified the H-Capital representative stated the financing process is not complicated, it required three months of bank statements, and someone from H-Capital visited his restaurant to discuss a $10,000 financing arrangement. Mr. Won did not fully understand the contract, but signed it because H-Capital represented the transaction as simple.  Mr. Won did not have a lawyer present. Mr. Won

6

testified he made automatic payments from his restaurant's business account, and understood he must have money in the account to cover the payment or there would be a late fee.

On cross-examination, Mr. Won testified he took classes in English at community college; if necessary, he sends text messages in English and infrequently emails in English.[24] Mr. Won testified he did not read the contract before signing it. When asked whether Defendants threatened or forced Mr. Won to sign the contract, Mr. Won responded he "just wanted the money."[25] Mr. Won further testified he was able to keep a copy of the contract with H-Capital.[26]

### 3. Deposition Testimony of Plaintiffs Master Yu's Power Kick and Korea Week

Both parties submitted portions of deposition testimony of Mr. Yu on behalf of Plaintiff Master Yu Power Kick and Ms. Kim and Mr. Kwon on behalf of Plaintiff Korea Week. Mr. Yu, communicating in English with Defendants' counsel, testified he: conducts instruction in English; read and understood his business' lease; has a lawyer for business issues including to review his lease, but does not use a lawyer for "simple stuff"[27]; and admitted he understood a telephone conversation with Defendants' representative.[28] Mr. Yu did not feel the need to take Defendants' agreement to his attorney or accountant, and understood the terms of the financing arrangement.[29] Mr. Yu received a copy of the contract.[30]

Ms. Kim and Mr. Kwon, husband and wife, are former owners of Korea Week newspaper.[31] Ms. Kim testified: she graduated from Temple University with a degree in nursing, taking her courses in English; and she reads, writes, texts, and emails in English.[32] Ms. Kim testified when Korea Week first contracted with H-Capital, Defendant Segal explained there is a fee to borrow money.[33] Mr. Lee, another owner of Korea Week, and Mr. Kwon both agreed to pay the fee, and Ms. Kim translated the transaction.[34] Ms. Kim admittedly could read the H-Capital contract and "skimmed through it" to translate it for Mr. Lee and her husband.[35] Ms.

Kim signed contracts with H-Capital after the first transaction, but did not read the contracts because Mr. Segal explained the terms and "that was all we needed to know."[36] At the time she signed the contracts, Ms. Kim knew the amount of money Korea Week would have to pay, including a "fee."[37] Mr. Kwon testified he did not need an attorney to review contracts with H-Capital, but could have consulted with the attorney Korea Week used in previous business transactions,[38] and could have, but did not, consult with Korea Week's accountant.[39]

## II.   Analysis

Plaintiffs admit they signed financing contracts with class action waivers but assert the waivers are unconscionable.  At the class certification hearing, Plaintiffs' counsel admitted there is no evidence of unconscionability as to Korea Week and conceded it could not be the class representative. There is no other evidence of unconscionability for any other waiver. Based on the evidence adduced at the class certification hearing, we find Plaintiffs failed to carry their burden to certify their proposed class.

### A. Class Certification under Rules 23(a) and (b)(3).

Rule 23(a) requires Plaintiffs meet four elements for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[40] If the requirements of Rule 23(a) are met, Plaintiffs must satisfy additional requirements of predominance and superiority required by Rule 23(b)(3).[41] Our Court of Appeals requires us to "rigorously assess" the available evidence to assure the prerequisites of Rule 23 are met.[42]

We focus today on whether Plaintiffs can adequately represent the unnamed merchants. Recognizing a named plaintiff who contractually agreed not to assert or participate in a class action may not be an adequate fiduciary, Plaintiffs claim the class action waiver is unconscionable and must be voided.

8

## B.  Unconscionability standard under Pennsylvania law.[43]

"Unconscionability is a 'defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract.'"[44] To prove unconscionability under Pennsylvania law, Plaintiffs must show the contract was substantively and procedurally unconscionable.[45] "The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability."[46] In determining unconscionability, our Court of Appeals directs we apply a "sliding scale approach;" "where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required."[47]

A contract is procedurally unconscionable where "there was a lack of meaningful choice in the acceptance of the challenged provision."[48] A contract is deemed procedurally unconscionable "when formed through 'oppression and unfair surprise.'"[49] We are directed by our Court of Appeals to "remain attuned to well-supported claims" an agreement resulted from "the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract."[50]

Under Pennsylvania law, a contract is considered procedurally unconscionable if it is a contract of adhesion; one that is a "standard form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms."[51] Unequal bargaining power, however, does not make a contract unconscionable, and we consider the "range of ordinary and acceptable bargaining situations" to distinguish between acceptable bargaining situations and those violating strong public policy.[52] Factors to be considered in determining procedural unconscionability include: "the take-it-or-leave-it nature of the standardized form of the document[,]" "the parties' relative bargaining positions," and "the degree of economic compulsion motivating the 'adhering' party[.]"[53]

A contract is substantively unconscionable where it "unreasonably favors the party asserting it."[54] Contractual terms that are "unreasonably or grossly favorable to one side and to which the disfavored party does not assent" are substantively unconscionable.[55]

### C. Unconscionability standard under New York law.

Ms. Hwang's and Mr. Won's contracts contain a choice of law provision applying New York law.[56] We briefly summarize New York's law of unconscionability which is substantially similar to Pennsylvania law.

A contract is considered unconscionable under New York law when "it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable . . . according to its literal terms."[57] "Generally, there must be a showing that such a contract is both procedurally and substantially unconscionable . . . The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract [, *per se*]."[58] Like Pennsylvania, New York law directs courts to weigh procedural and substantive unconscionability on a "sliding scale."[59]

To determine whether a contract is procedurally unconscionable, New York courts take a "flexible approach and consider all the facts and circumstances surrounding the making of an alleged agreement."[60] Relevant factors include the "commercial setting of the transaction, the experience and education of the parties, disparity in bargaining power, as well as whether deception, high-pressured tactics, and the use of fine print were used to deprive the disadvantaged party of a meaningful choice."[61] A contract signed under a "take it or leave it" condition does not render a provision procedurally unconscionable under New York law.[62] Failure to read a contract before signing, lack of education and experience or background in

business does not constitute procedural unconscionability.[63] In the employment context, "New York courts have repeatedly ruled that even the fact that a prospective employee possesses an imperfect grasp of the English language will not relieve the employee of making a reasonable effort to have the document explained to him."[64]

Unconscionability determinations are "ordinarily based on [a] conclusion that both the procedural and substantive components are present," but in "exceptional cases . . . a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone."[65]

### D. The class action waivers are not unconscionable.

Plaintiffs suggest the "take it or leave it" nature of Defendants' contracts, Plaintiffs' lack of bargaining power, and their "desperate need of the monies to be loaned" all create procedural unconscionability. Plaintiffs place significant weight on their lack of proficiency in the English language resulting in their inability to understand the contracts. "In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable."[66] In *Morales*, the Court of Appeals held enforceable an arbitration clause within an employment agreement signed by an employee who did not speak English.[67] The Court of Appeals found it was the employee's "obligation to ensure he understood the Agreement before signing."

Plaintiffs point to Ms. Hwang as an unsophisticated small business owner who does not speak English as a first language, did not read the contracts containing the class action waiver because her English is insufficient to understand the documents, and she was asked to sign the contract "on the spot."[68] Ms. Hwang admittedly texted with H-Capital in English, including a

11

text indicating she needed more money, and subsequently entered into two additional financing arrangements. Ms. Hwang testified Defendants did not pressure her to sign contracts.

Mr. Wong admitted he took classes in English at community college, did not read the contract with H-Capital before signing it, he kept a copy of the contract, Defendants neither threatened nor forced him to sign a contract, and he admittedly signed the contract with H-Capital because he "just wanted the money."

Both Ms. Hwang and Mr. Won admittedly contacted Defendants to enter into financing arrangements and both testified Defendants did not threaten or force them to sign contracts. There is no testimony from either Ms. Hwang or Mr. Won evidencing Defendants denied or precluded them the opportunity to review, or have read to them, the contracts with a friend, advisor or lawyer who could explain the terms of the financing.

At the hearing, Plaintiffs' counsel argued the class action waivers are procedurally unconscionable, relying on our decision in *Herzfeld v. 1416 Chancellor, Inc.*[69] We find *Herzfeld* distinguishable; there, the challenged arbitration agreement arose in an employment context. We found some basis for procedural unconscionability on the sliding scale dependent on our finding of substantive unconscionability; Herzfeld did not waive her collective or class action right, but lost it by operation of the arbitration clause itself thus precluding Herzfeld from bringing a collective action and class claims in arbitration. We found unconscionability under those circumstances. Plaintiffs' situation is distinguishable. First, Plaintiffs' agreements are in the commercial, not consumer or employment context. Plaintiffs' reply brief argues Defendants' financing are akin to consumer contracts and should be treated as such for purposes of class certification. Plaintiffs argue unconscionability because their agreements with Defendants are contracts of adhesion; Plaintiffs were in a weaker position than Defendants, and had little choice

12

regarding the terms. Plaintiffs argue under the sliding scale approach, there is an 'exceptionally high level of procedural unconscionability present here" requiring "lesser degree of substantive unconscionability."[70]

After evaluating the testimony of Ms. Hwang and Mr. Won, we cannot find either procedural unconscionability. Ms. Hwang and Mr. Won manage small businesses. They communicate, at least partially, in English. They understood the terms of the repayment, and met the terms of repayment. They are neither employees nor consumers suffering under a disproportionate leverage in a contract negotiation. Both answered advertisements soliciting funds from the Defendants. They met the Defendants, and even after experiencing the terms of the financing, continued to proceed with the financing.

Plaintiffs additionally argue substantive unconscionability based on our Court of Appeals' opinion in *Quilloin* leaving open the possibility class action waivers can be substantively unconscionable outside the context of arbitration. Plaintiffs argue because Federal Arbitration Act ("FAA") preemption is not at issue in this case,[71] we should apply state law cases such as *Thibodeau v. Comcast Corp.*, 912 A.2d 874 (Pa. Super. 2006), *Muhammad v. Cnty. Bank of Rehoboth Beach, Del.*, 912 A.2d 88, 100 (N.J. 2006), and *Discover Bank v. Superior Court*, 36 Cal.4[th] 148, 30 Cal. Rptr.3d 76, 113 P.3d 1100 (2005) to find unconscionable, and thus unenforceable, Plaintiffs' class action waivers.[72]

We turn, then, to whether a class action waiver independent and outside of an arbitration agreement is unenforceable. We find the Supreme Court's decision in *American Express Co. v. Italian Colors Restaurant*[73] supports our conclusion class action waivers outside of arbitration are enforceable. In *Italian Colors*, decided two years after *Concepcion*, the Supreme Court considered "[w]hether the [FAA] permits courts . . . to invalidate arbitration agreements on the

ground that they do not permit class arbitration of a federal-law claim."[74] The Court held the FAA does not permit courts to do so, finding Rule 23 does not "establish an entitlement to class proceedings for the vindication of statutory rights."[75] Class action waivers "merely limi[t] arbitration to the two contracting parties. It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief . . . Or, to put it differently, the individual suit that was considered adequate to assure 'effective vindication' of a federal right before adoption of class-action procedures did not suddenly become 'ineffective vindication' upon their adoption."[76]

We do not find the identical class action waiver in a financing contract between two businesses is substantively unconscionable. Plaintiffs do not lose any statutory right to pursue their damages under RICO. Defendants are not asserting, for purposes of class certification, the separate arbitration clause in some, but not all, contracts bars certification. We do not opine today whether the arbitration clauses in some of the Plaintiffs' contracts are enforceable or whether Defendants have waived the ability to now seek arbitration of individual RICO claims.

Unlike *Herzfeld* and much of the class action waiver jurisprudence, the Plaintiffs separately agreed to class action waiver and, for some of them, to mandatory arbitration. This is not the case where the mandatory arbitration prohibits a class action. We find this case is more similar to *Ulit4Less, Inc. v. FedEx Corp.* where the district court recently considered in a RICO putative class action whether a class action waiver outside an arbitration agreement may be unconscionable under state law.[77] Plaintiff argued a class action waiver in a shipping agreement with FedEx which did *not* contain an arbitration provision, is unconscionable under New York law and sought to distinguish *Italian Colors* as limited to arbitration agreements with class action waivers. The district court disagreed:

14

> Nothing in *Italian Colors* suggests that class action waivers contained in a provision also containing an arbitration agreement should be treated as more sacrosanct than waivers in context of a contract without an arbitration agreement. To be sure, the particular congressional policies in the arbitration context give additional impetus to enforcing that arbitration portion of the agreement. But no legal principle or policy principle suggests that the rationale underlying the Supreme Court's analysis in *Italian Colors* relating to the class action waiver should be different.[78]

The district court, in the absence of an arbitration agreement, applied a two part test to determine the enforceability of a class action waiver: "(1) The Court must first ask if the class action waiver at issue is unconscionable under the applicable state law; and, if not, (2) the Court must next ask if the statutory scheme (here, RICO) suggests legislative intent or policy reasons weighing against enforcement of such a waiver."[79] After examining New York law on unconscionability and the RICO statute, the district court held the class action waiver enforceable.[80]

We are persuaded by Judge Forrest's analysis, applying New York law, in *FedEx*. We find Plaintiffs have not shown the class action waiver is unconscionable. We also find RICO does not, through legislative intent, policy, or through the volumes of case law from other courts, weigh against enforcing the class action waiver. While we recognize RICO's remedial purposes, the parties have not shown us, nor have we found, any reason to interpret RICO as encouraging class actions. At best, it may be silent as to the individual versus collective rights of alleged victims. We join Judge Forrest in declining to read a suggestion of encouraging class actions into RICO.

**E. As the named Plaintiffs contractually waived their right to bring, or participate in, a class action they cannot adequately represent the proposed Class.**

As a class action judgment has preclusive effect upon absent class members, due process requires the class representative adequately represent these absent class members.[81] The class representative serves as a fiduciary for the absent class members.[82] Class representatives with rights to sue which vary from the absent class members are inadequate under Rule 23.[83] Class representatives must vigorously pursue the interests of class members, and inability or failure to do so renders the class representative inadequate.[84]

Plaintiffs do not argue they could serve as adequate class representatives if we find the class action waiver is enforceable. We found no evidence of unconscionability sufficient to void the class action waiver. Plaintiffs agreed, in exchange for financing, to waive any right to assert class action claims as either a representative or class member. As they agreed not to pursue a class action, their interests are patently conflicting with possible absent class members who may not have signed a class action waiver. While they may assert individual claims, they agreed not to serve as a class representative. They do not share the same interest. Their only interest now is to recover for themselves. We cannot find them suitable fiduciaries for absent class members.

**III.   Conclusion**

Each named Plaintiff seeks to be appointed as a class representative even though each agreed to waive "any right to assert any claims against any other party as a representative or member in any class or representative action." Plaintiffs do not claim lack of consideration or performance voids their promise. Rather, they ask us to void their class action waiver as unconscionable principally because they speak Korean as a principal language and while they are experienced merchants they should be treated as consumers. They can text and understand

English as merchants in the United States. They are not consumers or employees in the sense of disproportionate economic leverage. Unconscionability is a factual determination based on a sliding scale analysis of each Plaintiff's claim. Plaintiffs elected to present only the testimony of Ms. Hwang and Mr. Won. As set forth above, neither demonstrated procedural or substantive unconscionability. The Plaintiffs agreed to pursue claims on their own behalf and cannot now change their minds and transform into fiduciaries for others. We deny Plaintiffs' motion for class certification in the accompanying Order.

---

[1] ECF Doc. No. 49. Plaintiffs BKD59, Inc. and Catherine Hyun Suk Lee/Scholars Academy voluntarily withdrew as plaintiffs after the class certification hearing (ECF Doc. No. 73).

[2] 18 U.S.C. §1961 *et seq.* Plaintiffs propose the following class definitions:

> All persons, businesses, corporations, partnerships, companies, and/or business entities in the United States, whom from January 2007 to the present: applied, obtained, purchased, financed, and/or otherwise participated in receiving and/or obtaining Defendants' MCA business financial services and products, including but not limited to loan products, cash advances, purchase and sale of future receivables, and/or business loan related funding, and have claims for any one or more of the following: claims arising under RICO, including those with claims for Money Laundering pursuant to 18 U.S.C. § 1956 and §1957; claims for violations of Federal and State Usury Laws; claims for violations of the prohibition of unlicensed money transmitting businesses pursuant to 18 U.S. Code § 1960 and common law causes of action.

> Plaintiffs additionally propose a class defined as:

> All Persons, businesses, corporations, partnerships, companies, and/or business entities in the United States whom qualify as a protected class (color, race, ethnicity, and/or national origin) pursuant to the Equal Credit Opportunity Act 15 U.S.C. §1691 et seq. ("ECOA"), whom from January 2007 to the present, applied and were approved MCA financing and/or loans from Defendants.

*See* ECF Doc. No. 49-1 at 6-7.

Our April 21, 2016 Order (ECF Doc. No. 52) granted Defendants' partial motion to dismiss the Second Amended RICO Class Action Complaint and dismissed, *inter alia*, Plaintiffs' ECOA claim.

[3] We cite Plaintiffs' Second Amended RICO Class Action Complaint (ECF Doc. No. 40). "Defendants" are collectively H-Capital, LLC, Got Capital, LLC, NLYH, LLC, YLH, LLC, S-Capital, LLC, Kedma Capital, LLC, Perfect Funding, Inc. (all d/b/a/ H-Capital Advance or "Yalber"), Amir Landsman, Yedidia Harari, Nir Goshen, C. Aberin, Yehuda Folberg, Shalom Rubenstein, Amotz Segal, Philip Zarken, Hillel Imberman, and John Doe Individuals 1-30, and John Doe Companies 1-30 d/b/a H-Capital Advance, a/d/b/a Yalber.

[4] Defendants' answer to Plaintiffs' Second Amended RICO Complaint asserts the arbitration clause as a defense to the action. *See* Ninth and Thirteenth Affirmative Defenses (ECF Doc. No. 57). At the class certification hearing, Defendants' counsel candidly admitted some of Plaintiffs' contracts contain arbitration clauses while others do not, and thus Defendants oppose class certification on the class action waiver which they assert appears in every contract with Plaintiffs. Defendants additionally assert we lack personal jurisdiction over Defendants S-Capital, LLC and S-Capital d/b/a Yalber; Kedma, LLC and Kedma LLC d/b/a Yalber; Perfect Funding, Inc. and Perfect Funding, Inc. d/b/a Yalber; Shalom E. Rubenstein; Hillel Imberman; and Yehuda Folberg. *See* Eighth Affirmative Defense. At the hearing, Defendants' counsel waived any further defense for lack of personal jurisdiction.

[5] ECF Doc. No. 59.

[6] The appendix attached to Plaintiffs' Motion for Class Certification (ECF Doc. No. 49-6, 49-7, hereafter "P-xxx") contains six (6) agreements between Korea Week and Defendant YLH, LLC d/b/a H-Capital dated January 28, 2013 (P-193); Defendant Got Capital, LLC dated January 6, 2014 (P-214), March 20, 2014 (P-229), August 12, 2014 (P-237), and December 17, 2014 (P-243); and Defendant NLYH, LLC dated March 6, 2015 (P-249).

[7] Defendants' Exhibit 32 moved into evidence at the hearing is a compilation of all contracts between the named Plaintiffs and various Defendant corporate entities. We refer to these documents by the Defendants' Bates stamp number marked "DEF###." Defendants' counsel represented to the Court it produced these documents to Plaintiffs' counsel in discovery.

[8] *See* §7.3 in March 20, 2014, August 12, 2014, December 17, 2014, and March 6, 2015 Korea Week Agreements (P-232, P-240, P-246, P-252).

[9] *See* January 28, 2013 agreement at § 7.3 (P-196) and January 6, 2014 agreement at §7.3 (P-217) (emphasis in original).

[10] DEF334-337 at §§ 7.1, 7.3.

[11] DEF459-460, 476-477.

[12] DEF471-474.

[13] *See* notes 11 and 12, *supra*.

[14] DEF890-893.  The January 11, 2013 contract also appears at DEF1122-1125.

[15] July 20, 2011 contract at §6.5 (DEF1175); December 29, 2011 contract at §6.5 (DEF 1162-1163); June 1, 2012 contract at §§7.1, 7.3 (DEF1152); October 18, 2012 contract at §§7.1, 7.3 (DEF1134); January 11, 2013 contract at §§7.1, 7.3 (DEF1125); and March 5, 2013 at §§7.1, 7.3 (DEF1114).  The arbitration provision and class action waiver in the June 20, 2011 contract is slightly different in wording and provides, in relevant part:

> "This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to the principles of conflicts of law.  Merchant hereby agrees that if a controversy or claim is not otherwise resolved through direct discussions or mediation, it shall be resolved by binding arbitration conducted in New York before a single arbitrator.  Merchant hereby waives the right to a trial by jury. ***Merchant hereby waives the right to participate in a class action lawsuit in connection herewith. . . .***"

*See* §6.5 (DEF1175) (emphasis added).

The December 29, 2011contract also contains slightly different wording, providing in part:

> "This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to the principles of conflicts or law.  Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.  Such arbitration shall be conducted in the State of New Jersey.  Merchant hereby waives the right to trial by jury. ***Merchant hereby waives the right to participate in a class action lawsuit in connection herewith.***"

*See* §6.5 (DEF1162-1163) (emphasis added).

The other Master Yu's Power Kick contracts contain "Class Action/Class Arbitration Waiver" clauses identical to Korea Week's contracts set forth above.

[16] *See* §6.5 at DEF1175.  Although the copy of this contract is barely legible, we are able to make out the wording.

[17]   Defendants' Exhibit 32 contains a spreadsheet of all contracts between Plaintiffs and Defendants. Defendants list eleven (11) contracts with Plaintiff J & S Cleaners, however, Defendant submitted only nine (9) contracts, omitting a May 12, 2011 contract and an October 20, 2011 contract. We do not consider these purported contracts as we were not provided evidence of such either by Defendants or Plaintiffs.

[18] DEF1073-1082.

[19] April 28, 2010 at §6.5 (DEF1071); December 30, 2010 at §6.5 (DEF1085); March 7, 2011 at §6.5 (DEF1093); July 12, 2011 at §6.5 (DEF1102); November 21, 2011 at §6.5 (DEF900); March 27, 2012 at §§7.1, 7.3 (DEF918); May 24, 2012 at §§7.1, 7.3 (DEF927); and August 27, 2012 at §7.1, 7.3 (DEF935).

[20] *See* Hwang Affidavit (ECF Doc. No. 40-1).

[21] *Id.* at ¶ 26.

[22] Consistent with her hearing testimony, Ms. Hwang testified at deposition: no one from H-Capital pressured or forced her to sign any document "because, of course, I was borrowing" (Hwang dep. at 46; 57); she signed the document without reading it or getting it translated for her, even though H-Capital did not prevent her from doing so (Hwang dep. at 58-59); she signed the document because H-Capital asked her to sign (*Id.*).

[23] Ms. Hwang testified at deposition: she does not speak English, but she can read "American" or "Arabic" numerals; she knew the total amount of the financing, giving the example of "if it's two thousand, you know how it becomes two thousand, five hundred. Then five hundred is the interest. I only know about that much" (Hwang dep. at 44).

[24] At his deposition, Mr. Won testified he: reads English; was able to read text books while attending community college; is able to handle "simple texts" in English and email "simple sentences; can read emails and texts sent to him in English; and while not "perfect in reading," he "can communicate among friends" (Won dep. at 6). Mr. Won spoke English with Defendants' representative regarding financing (Won dep. at 18).

[25] Mr. Won testified at his deposition: he did not read the agreement "line by line, but I read the numbers, the back of the paper," he did not read the agreement because he knew he wouldn't be able to comprehend it in English, and was focused on "the money," and no one forbade him from reading the agreement (Won dep. at 22). Mr. Won additionally testified he signed a business lease in English (Won dep. at 24). With regard to the authorization he signed to have payments withdrawn from his bank account, Mr. Won testified he did not understand the authorization, but did not ask anyone from H-Capital to explain it, no one forced him to sign the authorization without reading it, he was given sufficient time to read the authorization if he wanted to, and did not ask H-Capital to allow for review by another who understood English better (Won dep. at 44). Mr. Won admittedly could have done so but he "needed the money. I was in a hurry, like needing money." (*Id.*)

[26] At his deposition, Mr. Won testified he did not receive a copy of the fully executed agreement with H-Capital (Won dep. at 46).

[27] Yu dep. at 12-13.

[28] Yu dep. at 35.

[29] Yu dep. at 41, 59-60.

[30] Yu dep. at 45.

[31] *See* Affidavit of Korea Week at ¶1 (ECF Doc. No. 40-2).

[32] Kim dep. at 5-6.

[33] *Id.* at 19.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 21-22.

[37] *Id.* at 23.

[38] Kwon dep. at 13-14, 38.

[39] *Id.* at 38, 42.

[40] Fed.R.Civ.P. 23(a).

[41] A plaintiff may seek class certification under Rule 23(b)(1), (2), or (3). Plaintiffs here seek to proceed under Rule 23(b)(3). *See Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) (citing *Marcus v. BMW of N.Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012)).

[42] *Reyes*, 802 F.3d at 484 (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309, 312 (3d Cir. 2008)).

[43] Plaintiffs' Reply Brief recognizes the various contracts with Defendants contain choice of law provisions applying the law of Pennsylvania, New York, and California. Plaintiffs argue the law on unconscionability from these three jurisdictions are sufficiently similar, and cite Pennsylvania and California law. *See* Reply Brief at 1, n.2 (ECF Doc. No. 59). Defendants agree, asserting "[t]he similarities between New York and Pennsylvania are close enough that the outcome on the question of the validity of the class action waiver does not change when the law of New York is applied." *See* Defendants' opposition, at 11 (ECF Doc. No. 53).

[44] *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir.1999) (quoting *Germantown Mfg. Co. v. Rawlinson*, 491 A.2d 138, 145 (Pa. Super. 1985)).

[45] *Quilloin v. Tenet Health System Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (citing *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007)).

[46] *Harris*, 183 F.3d at 181.

[47] *Quilloin*, 673 F.3d at 230.

[48] *Id.* at 235 (quoting *Salley*, 925 A.2d at 119).

[49] *Id.* (quoting *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 n.16 (Pa. 1981).

[50] *Id.* (quoting *Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 32-33 (1991)).

[51] *Id.* (quoting *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1190 (Pa. 2010)).

[52] *Id.*

[53] *Id.* at 235-36 (quoting *Salley*, 925 A.2d at 125).

[54] *Id.* at 230 (quoting *Salley*, 925 A.2d at 119).

[55] *Id.* (quoting *Harris*, 183 F.3d at 181).

[56] *See* §7.2 in Hwang's June 27, 2012 contract (DEF474); November 9, 2012 contract (DEF464); and March 19, 2012 contract (DEF480) and §7.2 in Won's June 21, 2012 contract at (DEF337).

[57] *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (internal quotation and citations omitted)) (considering unconscionability of arbitration agreement in Title VII employment action).

[58] *Id.* at 121-122 (internal citation and quotations omitted).

[59] *I.C. ex re. Solovsky v. Delta Galil USA*, 135 F.Supp. 3d 196, 211 (S.D. N.Y. 2015) (quoting *Simar Holding Corp. v. GSC*, 87 A.D.3d 688, 928 N.Y.S.2d 592, 595 (2011)).

[60] *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14- 8678, 2015 WL 2152703, at *12 (S.D.N.Y. May 6, 2015) (citing *Brennan v. Bally Total Fitness*, 153 F.Supp.2d 408, 416 (S.D.N.Y. 2001)) (arbitration provision in employment agreements of Spanish-speaking employees not unconscionable, employees compelled to arbitrate, motion for class certification denied as moot).

[61]  *Id.* at \*12 (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir.2003) (internal quotations and citations omitted)).

[62]  *Ragone*, 595 F.3d at 122 (quoting *Nayal*, 620 F.Supp. 2d at 521).

[63]  *Id.*

[64]  *Id.* (citing *Molina v. Coca-Cola Enter., Inc.*, No. 08-6370, 2009 WL 1606433, at \*8 (W.D. N.Y. June 8, 2009); *see also Victorio*, 2015 WL 2152703, at \* 13-\*15.

[65]  *Id.* at 122 (quoting *Gillman v. Chase Manhattan Bank N.A.*, 73 N.Y.2d 1, 12, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988) (internal citation omitted).

[66]  *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir. 2008).

[67]  *Id.* at 222-223 (collecting cases).

[68]  Plaintiffs' reply brief at 2-3 (ECF Doc. No. 59).

[69]  No. 14-4966, 2015 WL 4480829 (E.D. Pa. July 22, 2015).

[70]  Plaintiffs' reply brief at 5, n.4 (ECF Doc. No. 59).

[71]  As set forth above, Defendants have not moved to compel arbitration and admit some of Plaintiffs' contracts do not contain arbitration clauses.

[72]  Plaintiffs' Reply brief (ECF Doc. No. 59) at 7-8, n. 7.  In *Thibodeau*, the Pennsylvania Superior Court addressed whether an arbitration provision in a consumer contract precluding arbitration on a class-wide basis was unconscionable. The Superior Court held the arbitration clause with a class action waiver unconscionable under Pennsylvania law. *Thibodeau,* 912 A.2d at 885-886. Similarly, the New Jersey Supreme Court in *Muhammad* addressed whether a provision in an arbitration agreement of a consumer contract was unconscionable and unenforceable because it forbade class-wide arbitration. Applying New Jersey law on unconscionability, the court held the class arbitration waiver in a card holder agreement unenforceable. We find *Thibodeau* and *Muhammad* inapplicable here. First, the issue arose in the context of consumer contracts, not commercial transactions like Plaintiffs' contracts with Defendants. Secondly, they are invalidated by *Litman v. Cellco Partnership*, 655 F.3d 225 (3d Cir. 2011) ("*Litman II*") which relied on the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) holding state law – in that case California - "[r]equiring the availability of classwide arbitration . . . is inconsistent with the FAA." *Litman*, 655 F.3d at 232 (quoting *Concepcion*, 563 U.S. at 344). *Concepcion* specifically addressed *Discover Bank*, finding California law prohibiting class-action waivers in arbitration agreements in a consumer contract preempted by the FAA.

[73] 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013).

[74] *Id.* at 2308.

[75] *Id.* at 2309.

[76] *Id.* at 2311 (footnote omitted).

[77] No. 11-1713, 2015 WL 3916247 (S.D. N.Y. June 25, 2015).  In *Meyer v. Kalanick*, No. 15-9796, 2016 WL 2659591 (S.D.N.Y. May 9, 2016), Judge Rakoff recently addressed a class action waiver under California law included in the arbitration provision in a consumer antitrust case. Judge Rakoff distinguished *FedEx* as involving class action waivers not imbedded in arbitration clauses. Based on California law, Judge Rakoff found the FAA did not preempt California's unconscionability law as to class action waivers outside the arbitration context. Plaintiffs here are not proceeding under California law, are pursuing a RICO case, and are not consumers.

[78] *Fed Ex.* at * 4.

[79] *Id.*

[80] *Id.* at *4-*5.

[81]  *Key v. Gillette Co.,* 782 F.2d 5, 7 (1st Cir. 1986).

[82] *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983).

[83] *Brown v. Kelly,* 609 F.3d 467, 479-80 (2d Cir. 2010).

[84]  *Rattray v. Woodbury Cnty.*, 614 F.3d 831, 836 (8th Cir. 2010).